# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL ACTION |
| v. | ) | No. 10-20129-03-KHV |
| | ) | |
| MARCUS L. QUINN, | ) | CIVIL ACTION |
| | ) | No. 15-2659-KHV |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

On August 26, 2011, a jury found defendant guilty of conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine and more than 280 grams of cocaine base (Count 1), maintaining and conspiring to maintain a drug-involved premises within 1,000 feet of a school (Counts 2, 4 and 6), and possession with intent to distribute and distribution of cocaine base within 1,000 feet of a school (Counts 3, 7 through 10, and 14). See Verdict (Doc. #570). On January 23, 2012, the Court sentenced defendant to 360 months in prison. See Judgment In A Criminal Case (Doc. #688). This matter is before the Court on defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #879) filed March 16, 2015, defendant's [Amended] Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #884) filed May 15, 2015, which the Court construes as a motion to amend, and defendant's Motion For The Production Of Documents Pursuant To Rule 34 (Fed. R. Civ. P.) (Doc. #896) filed June 26, 2015. For reasons stated below, the Court overrules defendant's motions and denies a certificate of appealability as to the ruling on defendant's Section 2255 motion.

**Factual Background**

On July 27, 2011, a grand jury charged Willie F. Ford, Marcus Quinn, Mark Brooks, Antonio Quinn, Steven Quinn, Lavaughn J. Brown, Andrew J. Price, Keyaun C. James, Daniel Cardenas Garcia, Adriana A. Melendez, Polly Smith and Janis Diggins with conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine and more than 280 grams of cocaine base.  See Second Superseding Indictment (Doc. #514), Count 1.  The grand jury also charged Marcus Quinn with conspiracy to maintain a drug-involved premises at 2636 North 20th Street, within 1000 feet of a school (Count 2), conspiracy to maintain a drug-involved premises at 2632 North 20th Street, within 1000 feet of a school (Count 4), maintaining a drug-involved premises at 2635 North 20th Street, within 1000 feet of a school (Count 6) and six counts of possession with intent to distribute cocaine base, within 1,000 feet of a school (Counts 3, 7-10, 14). See id.

On direct appeal, the Tenth Circuit summarized the trial testimony as follows:

> The charges against Brooks and [Marcus] Quinn arose from an FBI investigation into a large drug-dealing operation in Kansas City, Kansas in 2010. The investigation focused on a residential neighborhood where law enforcement knew a number of houses were centers of drug distribution. The investigation started with a series of controlled purchases made by confidential informants. Most of the purchases were made at three nearby houses on the same street in Kansas City, with addresses 2636, 2635, and 2632. House number, 2632, the FBI determined, was a central distribution point known by drug buyers as "the Spot."
>
> The investigation turned to the houses' occupants – in particular, the Quinn brothers.  The FBI believed that Antonio Quinn controlled the Spot, where most of the drug-dealing occurred; that Steven Quinn controlled the house next door at 2636; and that defendant-appellant Marcus Quinn controlled and lived across the street at 2635.  Using its confidential informants, the FBI conducted controlled purchases of drugs, mostly crack cocaine, from all the brothers at their respective houses. Informants also made purchases from Marcus Quinn in which he had to go to Antonio's house across the street to obtain the drugs. In total, the government oversaw twenty-six controlled purchases.

As a result of the purchases the FBI determined that many other individuals sold drugs out of the Spot, including Willie Ford, Lavaughn Brown, Calvin Collins, and Andrew Price. As the investigation continued, the FBI came to believe that Antonio was the leader of the drug operation and that no one could sell out of the Spot except with Antonio's permission. As a result, the FBI obtained a Title III wiretap on Antonio's cell phone. The wiretap lasted from April to October 2010.

On October 13, 2010, the government conducted a raid on the houses and suspects, involving police officers from multiple jurisdictions. As police officers and FBI agents prepared to execute the warrants, five individuals ran out the back of the Spot, including Price, Brooks and Collins. They were promptly arrested. Firearms and large quantities of drugs and cash were seized as part of the arrests.

Brooks and [Marcus] Quinn were both indicted for conspiring to distribute crack cocaine, for conspiring to maintain a drug house within one-thousand feet of a school (an elementary school was nearby), and for possessing drugs with intent to distribute. A total of nine people were indicted for the conspiracy to distribute crack, including Antonio and Brown. Other codefendants on the conspiracy charge were Daniel Garcia and Adrian Melendez, who were alleged to have supplied the conspirators with powder cocaine that was then "cooked" into crack. Brown, Garcia, and Melendez all pleaded guilty and agreed to testify on behalf of the government in any trial against their codefendants. Antonio pleaded guilty and received a sentence of twenty-five years, but did not agree to testify. Brooks, Quinn, and Ford did not plead guilty, and were tried together. * * *

At their trial, the government relied heavily on the testimony of FBI agent Timothy Swanson. Swanson was the agent in charge of investigating the drug operation, though he did not become involved until July 2008. He was the first witness at trial. He began by testifying as to the objectives and course of the investigation. He testified that the FBI focused on a particular neighborhood in Kansas City, Kansas, where there were reports of frequent short-term vehicle and foot traffic – a pattern of activity consistent with drug dealing. Agent Swanson then spoke of the various investigative techniques employed by the FBI, including controlled purchases, physical surveillance, video surveillance, phone records, and wiretaps.

The first time Agent Swanson mentioned any of the charged coconspirators was during the discussion of the wiretap. Swanson stated that the cellular phone the FBI wiretapped belonged to Antonio Quinn. Then, Swanson offered opinion testimony to the effect that the individuals in the drug conspiracy "were being supplied with their cocaine from Antonio Quinn" and that "they had a common residence to sell the drugs from" (i.e., the Spot). Brooks R., Vol. 2 at 267. Swanson also agreed that no one could sell from the Spot unless they had Antonio's permission. He further stated that Steven and Marcus Quinn, along with Brooks,

Ford, James, Collins, Price, and Brown, all had access to the house.

Agent Swanson's testimony then turned to a second wiretap, this one placed on Adrian Melendez's phone. Explaining the need for the Melendez wiretap, Swanson identified Melendez as a supplier of powder cocaine to Antonio. Swanson also stated that there were few pertinent calls between Antonio and his brother, Marcus Quinn, a fact that Swanson attributed to the proximity of Antonio's house to Marcus's – they could just cross the street to speak.

A little later Agent Swanson clarified which individuals "controlled" the various houses in the neighborhood. Swanson identified house number 2635 as Marcus Quinn's residence and house number 2643 as a house under Marcus's control. Swanson also identified house number 2623 as Brooks's residence, which, he stated, was used as a meeting place for Melendez's and Garcia's delivery of drugs to Antonio and Brooks.

On cross-examination, Marcus Quinn's counsel went beyond the subjects broached by the government. He questioned Agent Swanson about whether the FBI's investigation uncovered any financial records referring to Marcus Quinn, records that might indicate he was part of the drug conspiracy. Quinn's counsel also asked Swanson whether there was evidence that Antonio supplied Marcus with drugs, or whether Marcus had any connections (physical or otherwise) to the Spot. Counsel tried to highlight – and this was the main theme of the defense – the difference between an individual dealing drugs alone, albeit in close proximity to others, and one dealing drugs as part of a group enterprise.

On his cross-examination of Agent Swanson, Brooks's counsel asked whether Swanson had actually seen Garcia and Melendez meet Antonio and Brooks at 2623 to exchange money and drugs. Swanson admitted that he had not. In a similar vein to Quinn's counsel, Ford's counsel concentrated his cross-examination questions on whether Ford could have been supplied with drugs by individuals other than Antonio, or was otherwise an independent operator rather than a coconspirator.

On redirect, the government dove deeper into the evidence that it would be presenting. For example, the government asked about specific phone calls that purportedly linked the defendants to Antonio and whether there was evidence of interdependence among participants in the drug operation.

Agent Swanson testified five more times throughout the trial, principally to give details of the controlled purchases but also to lay foundation for the phone calls recorded as part of the wiretap. He also testified about the government's proffer process following Brown's testimony. * * *

[Lavaughn] Brown was one of the government's key witnesses. He

implicated Brooks and Quinn in the conspiracy. He further testified that Antonio supplied all of them with the crack cocaine they dealt and that they shared expenses for the utilities at the Spot. Brown identified various voices in audio recordings the FBI had made – either via wiretaps or hidden microphones during the controlled buys – and explained code words and drug lingo used by coconspirators.

On cross-examination, the defendants' respective counsel highlighted details and facts in Brown's testimony that were not present in his initial proffer statements to the government. Brown admitted that his testimony was motivated, in part, by hopes that post-trial the government would ask for a reduction in his sentence.

United States v. Brooks, 736 F.3d 921, 927-29 (10th Cir. 2013).

On August 26, 2011, a jury found defendant guilty on all ten counts. See Verdict (Doc. #570). Defendant's total offense level was 42, with a criminal history category III, resulting in a guideline range of 360 months to life in prison.[1] On January 23, 2012, the Court sentenced defendant to 360 months in prison. See Judgment In A Criminal Case (Doc. #688). Gregory C. Robinson represented defendant throughout the district court proceedings. Jessica R. Kunen represented defendant on appeal.

On March 16, 2015, defendant filed a motion to vacate his sentence under 28 U.S.C. § 2255. Liberally construed, defendant's motion alleges that Robinson provided ineffective assistance because he did not object to the indictment as duplicitous and because the jury made no particularized findings on defendant's personal involvement, and he did not object to the Court's determination of drug type and quantity. Memorandum And Brief In Support (Doc. #880) at 10-14. Defendant claims that Kunen provided ineffective assistance on appeal because she did not argue

---

[1] The presentence investigation report calculated that under Count 1, which carried the most severe statutory penalties, defendant was subject to a mandatory minimum of 20 years and a maximum of life in prison. See Presentence Investigation Report (Doc. #660) ¶ 191; 21 U.S.C. § 841(b)(1)(A) (10 years to life, doubled to 20 years to life because defendant had prior drug felony conviction). Counts 2 through 4, 6 through 10 and 14 had statutory minimums of one year and maximums of either 40 or 60 years. See Presentence Investigation Report (Doc. #660) at 1.

- 5 -

that under Alleyne v. United States, 133 S. Ct. 2151 (2013), the Court improperly enhanced his sentence without specific jury findings on his prior conviction, drug type and drug quantity. See Memorandum And Brief In Support (Doc. #880) at 4-9. In an amended petition, which the Court construes as a motion to amend, defendant asserts additional claims that Robinson provided ineffective assistance because he did not file a motion to suppress co-defendants' statements, he opened the door at trial to prohibited overview and vouching testimony, and he did not adequately object to evidence of defendant's prior drug conviction. See [Amended] Motion Under 28 U.S.C. § 2255 (Doc. #884-1) at 15-22.

## **Analysis**

The standard of review of Section 2255 petitions is quite stringent. The Court presumes that the proceedings which led to defendant's conviction were correct. See Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989). To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974).

To establish ineffective assistance of counsel, defendant must show that (1) the performance of counsel was deficient and (2) a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness." United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992). The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988).

Strickland mandates that the Court be "highly deferential" in its review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. The Court must not second-guess counsel's assistance with the benefit of hindsight simply because defendant was convicted and sentenced to a lengthy prison term. See id.

## I.     **Failure To Object To Indictment Based On Duplicity**

Defendant argues that Robinson provided ineffective assistance because he did not argue that since they charged two or more separate offenses in the same count, Counts 2 through 4, 6 through 10 and 14 were duplicitous. See Memorandum And Brief In Support (Doc. #880) at 13.[2]

An indictment is sufficient if it sets forth the elements of the offense and puts defendant on fair notice of the charges against which he must defend. United States v. Gama-Bastidas, 222 F.3d 779, 785 (10th Cir. 2000); United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997). An indictment is duplicitous if it charges defendant with two or more separate offenses in the same count. United States v. Washington, 653 F.3d 1251, 1262 (10th Cir. 2011); United States v. Haber, 251 F.3d 881, 888 (10th Cir. 2001). A duplicitous indictment raises several potential dangers. For example, a jury may convict defendant without unanimously agreeing on the same offense; defendant may be prejudiced in a subsequent double jeopardy defense; and the trial court may have difficulty determining the admissibility of evidence. United States v. Trammell, 133 F.3d 1343,

---

[2]     Defendant also argues that Count 5 was duplicitous, but that count did not charge defendant.

1354 (10th Cir. 1998).

Defendant argues that it is unclear which offense formed the basis of the jury verdict on each of Counts 2 through 4, 6 through 10 and 14 because each count charges an offense under both 21 U.S.C. § 841(a) or § 856(a)(1) and 21 U.S.C. § 860(a) (enhancement of statutory maximum if defendant committed offense within 1,000 feet of a school). See Memorandum And Brief In Support (Doc. #880) at 13-14. At trial, the government did not suggest that the jury could convict on these counts based on alternative theories. Defendant has not shown a reasonable probability that some jurors based guilt on the lesser offense under Sections 841(a)(1) or 856(a)(1) and did not find that the offense also occurred within 1,000 feet of a school. See United States v. Taylor, 193 F. App'x 793, 795-96 (10th Cir. 2006). As to these counts, the instructions specifically required the jury to find all of the elements of the *greater* offense – that charged in Section 860(a). For example, the elements instruction on Count 3 required the jury to find beyond a reasonable doubt each of the following elements:

> FIRST: On or about August 30, 2007, in the District Of Kansas, Marcus Quinn intentionally distributed cocaine base ("crack cocaine");
>
> SECOND: When he did so, Marcus Quinn knew that the mixture or substance contained cocaine base ("crack cocaine"); and
>
> THIRD: Marcus Quinn distributed the cocaine base ("crack cocaine") within 1,000 feet of Northwest Middle School, Kansas City, Kansas, a public secondary school.

Instructions To The Jury (Doc. #562), Instruction No. 26. The jury verdict clearly reflects a finding of guilty under Section 860(a) on each of Counts 2 through 4, 6 through 10 and 14. Defendant has not shown how counsel's failure to raise a duplicity objection on these counts was deficient or prejudicial.

- 8 -

## II.     Failure To Object To Court Determination Of Drug Type And Quantity

Defendant argues that Robinson provided ineffective assistance because the jury made no particularized findings on defendant's personal involvement and he did not object to the Court's determination of drug type and quantity. See Memorandum And Brief In Support (Doc. #880) at 6, 10-12.

Defendant argues that on Count 1, Robinson should have proposed a jury instruction or verdict form which required the jury to specifically find guilt based on the drug types and quantities charged in Count 1 of the Second Superseding Indictment, i.e. more than five kilograms of cocaine and more than 280 grams of cocaine base. See id. at 4-5; Second Superseding Indictment (Doc. #514).  The jury instructions required the jury to specifically find that the "overall scope of the agreement involved more than 5 kilograms of cocaine or more than 280 grams of cocaine base ('crack cocaine')."  Instructions To The Jury (Doc. #562) filed August 26, 2011, No. 20.  In addition, the jury instructions required that the jury unanimously agree as to object of the agreement. See id. Because the jury unanimously found defendant guilty of a conspiracy offense involving either more than five kilograms of cocaine or more than 280 grams of cocaine base, the presentence investigation report properly noted the enhanced statutory penalties under Section 841(b)(1)(A), i.e. 20 years to life. See Presentence Investigation Report (Doc. #660) ¶ 191; 21 U.S.C. § 841(b)(1)(A) (10 years to life, doubled to 20 years to life because defendant had prior drug felony conviction). Either alternative (more than five kilograms of cocaine or more than 280 grams of cocaine base) triggered the enhanced penalties.  Accordingly, counsel's failure to ask for a special verdict form which required the jury to specify whether the offense involved more than five kilograms of cocaine or more than 280 grams of cocaine base was not deficient or prejudicial.

Defendant also asserts that counsel should have objected to the jury instructions and verdict form because they did not require the jury to find that defendant was personally accountable for a specific quantity of drugs. In Alleyne v. United States, 133 S. Ct. 2151 (2013), the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 133 S. Ct. at 2155. Counsel's failure to raise this objection was not deficient or prejudicial because the Court sentenced defendant based on the low end of the guideline range (360 months) and the statutory minimum (240 months) was below that range.[3] See United States v. Ramirez-Negron, 751 F.3d 42, 51 (1st Cir. 2014) (fact that defendant's guideline sentence exceeds mandatory minimum insufficient to establish that mandatory minimum governed or that Alleyne error occurred). Alleyne does not preclude the Court from finding drug type and quantity under the Guidelines in an amount greater than what the jury found so long as the Court does not use its finding to alter defendant's statutory sentencing range. United States v. Harrison, 591 F. App'x 684, 685 (10th Cir. 2015); United States v. Cassius, 777 F.3d 1093, 1097-98 (10th Cir. 2015); see United States v. Zar, 790 F.3d 1036, 1055 (10th Cir.) (Alleyne does not bar judicial fact finding in determining guideline range; rule applied in non-drug case), cert. denied, 136 S. Ct. 562 (2015). Here, the Court found drug type and quantity only for purposes of calculating defendant's guideline range, and the low end of that range exceeded the statutory minimum on each of the individual counts of conviction.[4]

---

[3] The Court rejected defendant's request for a variance from the guideline range of 360 months to life. In asking for a variance, defense counsel assumed that a statutory minimum of 240 months applied. See Transcript Of Sentencing (Doc. #787) at 52-53. Likewise, the presentence investigation report reflected that Count 1 carried a statutory minimum of 20 years. See Presentence Investigation Report (Doc. #660) ¶ 191.

[4] In contrast, the Tenth Circuit granted relief under Alleyne where absent a jury finding as to drug type and amount, the district court sentenced defendant to a statutory minimum term that
(continued...)

Defendant also asserts that Robinson provided ineffective assistance because at sentencing, he did not object that the Court calculated his guideline range based on drug type without a specific jury finding. See Memorandum And Brief In Support (Doc. #880) at 3. Defendant specifically asserts that because the jury verdict did not specify whether Count 1 involved cocaine or cocaine base, the Court should have considered only the amount of cocaine, which has more lenient penalties. See id. Even if the jury verdict had been limited to cocaine, the Court would have considered defendant's distribution of cocaine base as relevant conduct under the Guidelines and his offense level would have been identical. Counsel's failure to object in this regard was not deficient or prejudicial.[5]

---

[4](...continued)
was *above* the high end of the guideline range. See United States v. Biglow, No. 14-3104, 2015 WL 3559216, at *1 (10th Cir. June 9, 2015) (vacating sentence to statutory minimum of 60 months where jury did not make specific finding on drug type and quantity and absent statutory minimum, guideline range was 27 to 33 months).

[5] Defendant's motion does not directly assert that counsel should have objected that his sentence of 360 months exceeded the statutory maximum of 240 months on Count 1, but any such challenge would have been without merit. The Sentencing Guidelines specifically instruct district courts to stack sentences where the guideline range exceeds the statutory maximum on a single count of conviction. See U.S.S.G. § 5G1.2(d) (if sentence imposed on count carrying highest statutory maximum is less than total punishment, then sentence imposed on one or more of other counts shall run consecutively to the extent necessary to produce combined sentence equal to total punishment); App. Note 1 to U.S.S.G. § 5G1.2(d) (if no count carries an adequate statutory maximum, consecutive sentences to be imposed to extent necessary to achieve total punishment); see also 18 U.S.C. § 3584 (if multiple terms of imprisonment imposed at same time, court may run terms concurrently or consecutively after considering various factors under Section 3553(a)); United States v. Lewis, 594 F.3d 1270, 1276 (10th Cir. 2010) (where guideline range was life but no offense of conviction carried maximum sentence of life, eminently reasonable for district court to impose sentence functionally equivalent to life by imposing maximum sentence for each crime of conviction and making sentences consecutive); see United States v. Ivory, 532 F .3d 1095, 1107–08 (10th Cir.2008) (hardly unreasonable to "stack" statutory sentences to reach presumptively reasonable Guidelines sentence); United States v. Johnson, 451 F.3d 1239, 1243 (11th Cir. 2006) (Section 5G1.2(d) requires that sentences run consecutively to extent necessary to reach guideline range). Here, defendant's sentence of 360 months was well below the statutory maximum of 40 or 60 years on the nine other counts of conviction. See 21 U.S.C. § 856(b) (maintaining drug-involved
(continued...)

The Court overrules defendant's claim that Robinson provided ineffective assistance because he did not ask the jury to make particularized findings on defendant's personal involvement and he did not object to the Court's determination of drug type and quantity.

### III. Failure To Raise Alleyne On Appeal

On June 17, 2013, the Supreme Court issued its decision in Alleyne. The Tenth Circuit did not rule on defendant's direct appeal until August 16, 2013. Defendant argues that Kunen provided ineffective assistance because she did not argue on appeal that under Alleyne, the Court improperly enhanced his sentence without specific jury findings on his prior conviction, drug type and drug quantity. See Memorandum And Brief In Support (Doc. #880) at 4-9.

    A.    Defendant's Prior Conviction

Defendant argues that Kunen should have argued that Alleyne required a specific jury finding on defendant's prior conviction. Shortly after Alleyne, the Tenth Circuit noted that Alleyne left in place Supreme Court precedent in Almendarez-Torres v. United States, 523 U.S. 224 (1998), which held that the fact of a prior conviction need not be submitted to the jury. United States v. Ridens, 792 F.3d 1270, 1274 (10th Cir.), cert. denied, 136 S. Ct. 494 (2015); United States v. Stanley, 550 F. App'x 588, 591 (10th Cir. Dec. 18, 2013); United States v. Goodwin, 541 F. App'x 851, 852 (10th Cir. Oct. 7, 2013) see Alleyne, 133 S. Ct. at 2160 n.1; Almendarez-Torres, 523 U.S. at 247. Defendant has not shown that appellate counsel's failure to argue that Alleyne effectively

---

⁵(...continued)
premises subjects offender to statutory maximum of 20 years in prison) and 21 U.S.C. § 860(a) (maintaining drug involved premises within 1,000 feet of school subjects offender to twice the punishment authorized under § 856) (applied to Counts 2, 4 and 6); see also 21 U.S.C. § 841(b)(1)(C) (distribution of Schedule I or II controlled substance and prior conviction for drug felony offense subjects offender to statutory maximum of 30 years in prison) and 21 U.S.C. § 860(a) (distribution of controlled substance within 1,000 feet of school subjects offender to twice the punishment authorized under § 841) (applied to Counts 3, 7 through 10 and 14).

overruled Almendarez-Torres was deficient or prejudicial.

### B. Drug Type And Quantity

Defendant argues that appellate counsel should have argued that Alleyne required a specific jury finding on drug type and quantity. The Court overrules defendant's argument for substantially the reasons stated above as to Robinson's failure to raise this issue at the district court level. In particular, the specific statutory range on Count 1 was immaterial to defendant's sentence because the Court did not rely on the statutory minimum on any count. See supra text, Part II.

### IV. Proposed Amended Claims Of Ineffective Assistance Of Counsel

On May 15, 2015, defendant filed an amended motion which claims that Robinson provided ineffective assistance because he did not file a motion to suppress co-defendants' statements; he opened the door at trial to prohibited overview and vouching testimony; and he did not adequately object to evidence of defendant's prior drug conviction. See [Amended] Motion Under 28 U.S.C. § 2255 (Doc. #884-1) at 15-22.

Section 2255 provides a one-year period of limitation which ordinarily runs from the date on which the judgment of conviction becomes final.[6] Rule 15, Fed. R. Civ. P., governs a motion to

---

[6] The one-year period of limitation runs from the latest of –

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

(continued...)

amend a Section 2255 petition if it is made before the one-year limitation period has expired. United States v. Ohiri, 133 F. App'x 555, 559 (10th Cir. 2005). Here, defendant filed his motion to amend after the one-year deadline.[7]

An untimely amendment to a Section 2255 motion may relate back to the date of the original motion if the original motion was timely filed and the proposed amendment does not seek to add a new claim or insert a new theory. United States v. Espinoza-Saenz, 235 F.3d 501, 505 (10th Cir. 2000). Here, the Court denies leave to amend because defendant seeks to insert new theories which are not part of the original claims related to Robinson's failure to object to the indictment as duplicitous, Robinson's failure to object to the Court's determination of drug type and quantity or Kunen's failure to raise appellate claims based on Alleyne. See id. (rejecting new claims of ineffective assistance filed two months after deadline in 28 U.S.C. § 2255).[8]

Defendant's proposed claims also appear to lack substantive merit. Defendant argues that Robinson provided ineffective assistance because he did not file a motion to suppress the hearsay statements of co-defendants. See [Amended] Motion Under 28 U.S.C. § 2255 (Doc. #884-1) at 15-

---

[6](...continued)
28 U.S.C. § 2255(f).

[7] When defendant has filed an appeal, a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court ruling. Clay v. United States, 537 U.S. 522, 524-25 (2003). Here, the Supreme Court denied defendant's petition for a writ of certiorari on March 10, 2014. Therefore defendant had until March 10, 2015 to file a motion to vacate under Section 2255. Here, defendant filed his motion to amend on May 15, 2015. Defendant has not shown that his proposed supplemental claims were tolled under Section 2255(f)(3) or (f)(4). See 28 U.S.C. § 2255(f)(3) (extends filing deadline for claims based on right which "was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"); 28 U.S.C. § 2255(f)(4) (extends filing deadline for claims based on new facts).

[8] The Tenth Circuit has explained that the restriction on amendment of a Section 2255 petition is to prevent a defendant from undermining the one-year limitations period by alleging new claims of error after the expiration of the limitations period. See id.

- 14 -

17. In particular, defendant claims that counsel should have requested a preliminary hearing to exclude statements in proffer interviews by Brown and Melendez because they did not make their statements during and in furtherance of the conspiracy. See id. at 15. At trial, Agent Timothy Swanson testified that the proffer statements of Brown and Melendez were largely consistent with their trial testimony, but he did not testify as to the details of the statements. On direct appeal, the Tenth Circuit noted that asking a witness to compare a prior statement and trial testimony does not necessarily elicit hearsay statements. Brooks, 736 F.3d at 936 (citing United States v. Martinez, 76 F.3d 1145, 1151 (10th Cir. 1996)). Because Agent Swanson did not set forth specific details of the statements, they were not hearsay. Counsel's failure to object to the statements as hearsay was not deficient or prejudicial.

Defendant alleges that Robinson also provided ineffective assistance because at trial, he opened the door to prohibited overview and vouching testimony. See [Amended] Motion Under 28 U.S.C. § 2255 (Doc. #884-1) at 17-19. At trial, on cross-examination of Brown and Melendez, counsel for Brooks and Quinn tried to highlight the fact that the proffer statements of the witnesses omitted certain details which they included in their trial testimony. In response, Agent Swanson testified that the proffer statements of Brown and Melendez were largely consistent with their trial testimony. Agent Swanson also testified that during the proffers, to gauge the truthfulness of the witnesses, he posed questions to which he already knew the answers. Defendant objected to the testimony as bolstering the truthfulness of the cooperating witnesses, but the Court ruled that defense counsel's cross-examination of the witnesses about their proffers put into issue the whole process of debriefing and cooperation. On direct appeal, the Tenth Circuit stated as follows:

> By casting doubt on how forthcoming the witnesses were during their proffers, the defendants opened the door to testimony about how the government conducted the proffer process.

> In any event, Agent Swanson's testimony did not amount to improper bolstering. While the defendants contend this testimony amounted to the government's implicit guarantee that it could monitor the witnesses' truthfulness, we rejected a similar argument in United States v. Jones, 468 F.3d 704 (10th Cir. 2006). There, though the government agent testified that he used the proffer process to "gauge truthfulness," we found that such statements "did not amount to guarantees concerning the veracity of the witnesses." Id. at 708. Similarly, here, at no point did Swanson explicitly or implicitly guarantee that the witnesses' statements were true. See [United States v.] Bowie, 892 F.2d [1494,] 1498 [(10th Cir. 1990)].

Brooks, 736 F.3d at 935. Counsel's decision to question Brown and Melendez on various discrepancies between their proffers and their trial testimony was within the wide range of reasonable professional assistance. Most lines of questioning open doors to rebuttal testimony. The Court will not second guess counsel's strategic choice to challenge the credibility of the cooperators' trial testimony simply because the jury ultimately found that they were credible. Even if counsel's questioning about the proffer statements was deficient, defendant has not established that counsel's performance was prejudicial, i.e. a reasonable probability that if counsel had not questioned Brown and Melendez about their proffers, the results of trial would have been different. See id. (Agent Swanson did not explicitly or implicitly guarantee that the cooperators' statements were true); id. at 936 (Swanson testimony about Brown either was not hearsay or did not affect outcome of trial).

Defendant alleges that Robinson provided ineffective assistance because he did not adequately object to evidence of his prior drug conviction. See [Amended] Motion Under 28 U.S.C. § 2255 (Doc. #884-1) at 19-22. In particular, defendant asserts that Robinson should have objected to evidence of his 2000 conviction as a constructive amendment of the indictment or a violation of the Double Jeopardy Clause. See id. On direct appeal, the Tenth Circuit held that because defendant's prior conviction for drug distribution satisfied the requirements of Rules 401, 403 and 404(b), the Court did not abuse its discretion in admitting the conviction. See Brooks, 736 F.3d at

941. At trial, the Court gave the jury a limiting instruction as follows:

> You have heard evidence that in the past, defendants committed other crimes. You may consider that evidence only as it bears on any defendant's plan, intent, motive, preparation and knowledge, and whether defendant entered into a conspiracy, and for no other purposes. Obviously, the fact that a defendant previously committed an act similar to the one charged in this case does not mean that the defendant committed the acts charged in this case.

Instructions To The Jury (Doc. #562) filed August 26, 2011, No. 10. In light of the limiting instruction and the Tenth Circuit ruling on direct appeal, defendant has not alleged sufficient facts to show that counsel's failure to raise additional objections to admission of his prior conviction was deficient or prejudicial.

## **Conclusion**

The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which, if true, would entitle him to relief. Accordingly, no evidentiary hearing or response by the government is required. See 28 U.S.C. § 2255; United States v. Cervini, 379 F.3d 987, 994 (10th Cir. 2004) (standard for evidentiary hearing higher than notice pleading); United States v. Kilpatrick, 124 F.3d 218 (Table), 1997 WL 537866, at *3 (10th Cir. 1997) (conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where court may resolve factual matters raised by Section 2255 petition on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by record).

## **Certificate Of Appealability**

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate

of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).[9] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)). For reasons stated above, the Court finds that defendant has not satisfied this standard. The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.[10]

**IT IS THEREFORE ORDERED** that defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #879) filed March 16, 2015 be and hereby are **OVERRULED**.

**IT IS FURTHER ORDERED** that defendant's [Amended] Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #884) filed May 15, 2015, which the Court construes as a motion to amend, be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that a certificate of appealability as to the ruling on defendant's Section 2255 motion is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's Motion For The Production Of Documents Pursuant To Rule 34 (Fed. R. Civ. P.) (Doc. #896) filed June 26, 2015 be and hereby is **OVERRULED**.

---

[9] The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

[10] Defendant also has requested an updated copy of the docket sheet so that he can determine court dates and times, and to make an informed decision on how to further plead. See Motion For The Production Of Documents Pursuant To Rule 34 (Fed. R. Civ. P.) (Doc. #896). The Court finds that this matter can be resolved based on the present record. The Court therefore overrules defendant's motion for documents as moot.

Dated this 26th day of February, 2016 at Kansas City, Kansas.

>                             s/ Kathryn H. Vratil
>                             KATHRYN H. VRATIL
>                             United States District Judge